UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**PLAQUEMINES HOLDINGS, LLC**                         CIVIL ACTION

**VERSUS**                                            NO: 11-3149

**CHS, INC.**                                         SECTION: "C" (4)

ORDER

Before the Court is Plaintiff, Plaquemines Holdings, LLC's, ("Plaquemines") **Plaquemines Holdings, LLC's Motion to Reconsider (R. Doc. 48)**, seeking an Order from this Court reconsidering a portion of its January 30, 2013 Order denying Plaquemines' motion to quash (R. Doc. 44). The motion is opposed (R. Doc. 52), and was heard on the briefs on March 13, 2013.

**I.      Background**

This is a suit brought to enforce a servitude by the holder of the dominant estate.[1] Plaquemines alleges that it owns a grain elevator stationed in Myrtle Grove, Louisiana. (R. Doc. 1-1, p. 5). The elevator fronts the Mississippi River, and includes both storage facilities, as well as a dock on the river. *Id.* Plaquemines also alleges that it holds two duly recorded servitudes which allow it to effectively operate its grain elevator. The first servitude, a "dock and delivery" servitude,

---

[1] This case was originally filed in Louisiana state court, but was duly removed to federal court on December 27, 2011. (R. Doc. 1).

gives Plaquemines "the right to construct, operate, maintain, and replace a dock . . . along 400 feet of batture on the immediate downriver side . . . together with the right to construct and maintain appurtenant delivery systems and equipment on the land side of the levee to move product to and from the dock." *Id.* at 6. The second servitude, a "belt" servitude, was not discussed in Plaquemines' Complaint.

Plaquemines alleges that CHS, which owns the servient land parcel, has begun acquiring permits and engineering a "large holding or retaining pond." (R. Doc. 1-1, p. 4). According to Plaquemines, some excavation of the site has already occurred; further, this construction will require use of the "land" side of its servitude, and therefore impede Plaquemines' enjoyment of its servitude rights. Plaquemines seek a preliminary and permanent injunction barring CHS' "further excavation" of the site, as well as a mandatory injunction requiring CHS to return the servient property to the same physical state it was in prior to the beginning of excavation. *Id.* at 7.

On January 30, 2013, the Court issued an Order which denied Plaquemines' motion to quash certain discovery propounded on it by CHS. During the course of its Order, the Court briefly discussed a bankruptcy proceeding during which the servient land parcel was conveyed through a bidding process to an entity co-owned by Jeffrey Henderson ("Henderson") (R. Doc. 44). During this discussion, the Court remarked on statements made by Plaquemines at oral argument concerning several conversations between Henderson and Kenneth Stewart, ("Stewart") during which Henderson offered Stewart the opportunity to become "involved" in the property. *Id.*

In the instant motion, Plaquemines requests that the Court reconsider a portion of its prior Order (R. Doc. 44), specifically a footnote which discusses the conversations between Henderson

2

and Stewart; Plaquemines argues could be "misconstrued" by the district court. The motion is opposed.

## II.     Standard of Review

The ruling by which this Court denied Plaquemines motion for a protective order is a non-dispositive pretrial matter. As such, Rule 59 does not strictly apply because this Rule pertains to the alteration or amendment of "judgments." Rule 59(e). According to Rule 54(a),"'[j]udgment' as used in these rules includes a decree and any order from which an appeal lies." *Id.* Instead, for this type of pretrial ruling, the Court has the power to "afford such relief from them as justice requires." *See* Rule 60 (Advisory Comment Note to 1946 amendment). In these cases, courts have applied the "less stringent" requirement under Rule 54(b). *See Century Products Co. v. Cosco, Inc.*, 2003 WL 251957, at *5 (N.D. Tex. 2003) (applying the "less stringent" Rule 54(b) standard to motions to reconsider in cases where a decision is not final).

Rule 54(b) states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment." *Id.* In keeping with this standard, the Fifth Circuit has held that "[i]t is a well established rule of trial procedure that a district court may reconsider . . . a previous interlocutory order at its discretion." *Holoway v. Triola*, 172 F.3d 866, 1999 WL 129656, at *1 (5th Cir. Feb. 2, 1999) (Table, Text in Westlaw) (citing Rule 54(b)); *Saqui v. Pride Cent. America, LLC*, 595 F.3d 206, 210-11 (5th Cir. 2010). "The exact standard applicable to the granting of a motion under Rule 54(b) is not clear, though it is typically held to be less exacting than would be a motion under Rule

3

59(e)." *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 474-75 (M.D. La. 2002).[2]

### III. Analysis

#### A. Appropriate Rule Governing "Reconsideration"

In support of its motion, Plaquemines states that "this motion is not, strictly speaking, a Rule 59 motion to amend or reconsider, since it seeks to amend an interlocutory order." *Id.* at 5. Nevertheless, Plaquemines argues that Rule 59(e) can be used as a "guideline" to govern consideration of the motion, including whether it was timely brought. (R. Doc. 48-1, pp. 5-6).

In opposition, CHS argues that Rule 59(e) is inapplicable because the Court's Order is a non-dispositive pretrial order, for which "judgment," as properly defined in Rule 54(a), has not occurred. (R. Doc. 52, p. 2). Instead, CHS argues that the proper procedural mechanism was to appeal the undersigned's ruling to the presiding U.S. District Judge under Rule 72. *Id.* at 2-3. Under this rule, Plaquemines' motion was untimely, as Plaquemines was obligated to appeal the ruling no later than 14 days after the undersigned's January 30, 2013 Order was issued. In this case, more than fourteen days elapsed before Plaquemines filed the instant motion for reconsideration.

The Court notes that based on the fact that Plaquemines itself indicates that its motion seeks

---

[2]Accordingly, some sections of this Court have referenced the factors under Rule 59(e) as a guide in determining whether the movant has provided reasons for reconsideration of an interlocutory order. *See, e.g.*, *Gulf Fleet Tiger Acquisition, L.L.C. v. Thoma-Sea Ship Builders, L.L.C.*, 284 F.R.D. 146, 151-53 (E.D. La. 2012) (Brown, J.); *Castrillo v. Am. Home Mtg. Serv'ing Co.*, No. 09-4369, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.); *Rosemond v. AIG Ins.*, No. 08-1145, 2009 WL 1211020, at *2 (E.D. La. May 4, 2009) (Barbier, J.); *In re Katrina Canal Breaches*, No. 05-4182, 2009 WL 1046016, at * 2 (E.D. La. Apr. 16, 2009) (Duval, J.). The four factors under that Rule are: (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in controlling law.

in part to "clarify" the Court's January 30, 2013 Order, it would be improper to view the motion strictly as a one for "reconsideration" under Rule 59(e). The Court also notes that the plain language of Rule 72 does not foreclose the possibility that a party may seek alternate avenues of relief; instead, the Rule states that "[a] party *may* serve and file objections to the order within 14 days."

Instead, the Court finds that this motion to "clarify" is more properly analyzed under Rule 54(b). Because Rule 54(b) does not impose a strict time limit on when the motion has been filed, the fact that Plaquemines filed its motion 21 days after the Court issued its Order is of no moment. *See Zapata Gulf Marine Corp. v. Puerto Rico Maritime Shipping Authority*, 925 F.2d 812, 815 (5th Cir. 1991).

### B.     Merits of Motion

In support of its motion, Plaquemines states that it does contest the Court's conclusion in its January 30, 2013 Order, and has already produced the discovery which Plaquemines sought to protect. (R. Doc. 48-1, p. 1). Rather, Plaquemines requests that the Court "clarify and to amend" footnote 14 of its Order which, according to Plaquemines, "contains an error which could have potential consequences with respect to the substantive issues to be determined by the Court during the April 2013 trial of this matter." *Id.* at 4. According to Plaquemines the "error" in footnote 14 becomes apparent when comparing the text of the footnote to the December 19, 2012 hearing transcript. The text of the footnote reads:

> Plaquemines *stated at oral argument* that this delay was attributable to the fact in June 2011 Henderson asked Stewart for a loan and to become involved with Plaquemines, as he had managed the property before. However, Stewart did not have the money in June 2011, as he was waiting for a real estate transaction to close, which it did in July 2011, after which time he was able to loan the money to

5

> Henderson. Regardless of the reason for the delay in Stewart's involvement, Plaquemines provides no explanation of why it did not *exist* at the time JAH took title at the bankruptcy sale. *See* (R. Doc. 38-1, p. 8). If other contractual agreements exist, either in the records of the bankruptcy proceeding or elsewhere, they have not been submitted to the Court in consideration of the instant motion.

(R. Doc. 44, p. 11 n.14) (emphasis added and in original). The relevant hearing transcript excerpt, quoted in Plaquemines' brief, states as follows:

> I know what happened and I know what Mr. Stewart really testified to is that two months following the bid -- he had no interest in Plaquemines Holdings and he had no interest in JAH. Two months following the successful bid process, the approval in June of last year, Mr. Henderson asked Mr. Stewart for a loan and asked him to get involved because Mr. Stewart had managed this property before. Mr. Stewart didn't have the money in June to buy the property. He closed a bid deal and made a $25 million profit in July, and so he loaned the money to Mr. Stewart and took an interest.

(R. Doc. 48-1, p. 4; R. Doc. 45, p. 17). According to Plaquemines, "footnote 14 implies that Mr. Stewart was involved and wanted to invest in the JAH bid 'in June 2011." *Id.* at 5. However, Plaquemines argues that "nothing said by counsel at oral argument supports Mr. Stewart's involvement earlier than the August date of the transactions." *Id.* at 5. Plaquemines argues that unless footnote 14 is corrected, the district court may "somehow misread footnote 14 to somehow indicate that, contrary to the actual evidence, Mr. Stewart was involve with the June bid process." *Id.* at 5.

In opposition, CHS points out that Plaquemines' counsel also stated that Mr. Stewart "didn't have the money in June to buy the property," which leads to the commonsense question of how Stewart knew he did not have enough money to buy the property, unless someone informed him of the property's cost. (R. Doc. 52, p. 4).

6

The Court first points out that footnote 14 is premised by the phrase "Plaquemines stated at oral argument." Therefore, any concerns Plaquemines might have regarding whether the district court will "somehow misread" the footnote are alleviated by the plain language used to characterize the content of footnote 14, which indicates that the Court's discussion is of an *argument*, and not an *established fact*. The Court agrees that, strictly speaking, it is true that counsel for Plaquemines "did not make the statement attributed to him by the court." (R. Doc. 48-1, p. 5). However, it is axiomatic that judicial opinions consist of more than direct quotations from counsel.

Further, a fair reading of footnote 14 does not support the argument that Stewart "wanted" to invest in the property. Instead, the Court's word choice indicates that *Henderson* approached Stewart and *asked* Stewart to become involved. To the degree Stewart's *excuse* for failing to become involved - that he did not "have the money" - is construed as a *desire* to become involved, such an inference is no stronger in the language of the Court's Order than it was in Plaquemines' statements to the Court. Similarly, the Court used the phrase "regardless of the reason for the delay in Stewart's involvement" because according to Plaquemines' own statements, Henderson in fact asked Stewart to become "involved," and Stewart in fact "took an interest" in the property at a later date. Thus, there was an actual "delay," in "involvement," although the Court was careful not to draw conclusions about the *reasons* for the delay. Further, there is nothing in the Court's language that suggests that Henderson first approached Stewart during the pendency of the bankruptcy bidding process.

Finally, moving from the plain language of footnote 14, the Court agrees with CHS' commonsense inference from the statement that Stewart "didn't have the money" to become

"involved" in the property when first asked.  Unless at least some information regarding the cost of the property had been disclosed to Stewart, there would be no basis for Plaquemines to have stated, at oral argument, that Stewart made the excuse that he did not "have the money."

In sum, the Court finds that Plaquemines' request for "reconsideration" relies on a considerable degree of speculation about what might be inferred from Henderson and Stewart's conduct.  This speculation both overlooks the fact that the Court characterized the content of footnote 14 as statements made "at oral argument," and does not reflect a fair reading of the language the Court used.  Therefore, the court finds that Plaquemines' motion is denied.

### IV.     Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff, Plaquemines Holdings, LLC's, ("Plaquemines") **Plaquemines Holdings, LLC's Motion to Reconsider (R. Doc. 48) is DENIED**.

New Orleans, Louisiana, this 1st day of April 2013.

**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

8