UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PLAQUEMINES HOLDINGS, LLC                    CIVIL ACTION

VERSUS                                       NO: 11-3149

CHS, INC.                                    SECTION "C" (4)

<u>ORDER</u>

Before the Court is Defendant, CHS, Inc.'s, ("CHS") **Motion to Compel and for Judicial**

**Supervision of Deposition (R. Doc. 55)** seeking an Order from this Court compelling, Plaintiff,

Plaquemines Holdings, LLC, ("Plaquemines") to produce Kennett Stewart, ("Stewart") to appear

to testify as a 30(b)(6) witness for two corporate entities.  The motion is opposed (R. Doc. 68), and

was heard by oral argument on Wednesday, April 10, 2013.[1]

I.      <u>Background</u>

This is a suit brought to enforce a servitude by the holder of the dominant estate.[2]

Plaquemines  alleges that it owns a grain elevator stationed in Myrtle Grove, Louisiana.  (R. Doc.

1-1, p. 5).  The elevator fronts the Mississippi River, and includes both storage facilities, as well as

a dock on the river.  *Id.*  Plaquemines also alleges that it holds two duly recorded servitudes which

---

[1]The motion was previously subject to a motion to expedite, which was denied. (R. Docs. 57, 62).

[2]This case was originally filed in Louisiana state court, but was duly removed to federal court on December 27, 2011.  (R. Doc. 1).

allow it to effectively operate its grain elevator.  The first servitude, a "dock and delivery" servitude, gives Plaquemines "the right to construct, operate, maintain, and replace a dock . . . along 400 feet of batture on the immediate downriver side . . . together with the right to construct and maintain appurtenant delivery systems and equipment on the land side of the levee to move product to and from the dock."  *Id.* at 6.  The second servitude, a "belt" servitude, was not discussed in Plaquemines' Complaint.

Plaquemines alleges that CHS, which owns the servient land parcel, has begun acquiring permits and engineering a "large holding or retaining pond."  (R. Doc. 1-1, p. 4).  According to Plaquemines, some excavation of the site has already occurred; further, this construction will require use of the "land" side of its servitude, and therefore impede Plaquemines' enjoyment of its servitude rights.  Plaquemines seek a preliminary and permanent injunction barring CHS' "further excavation" of the site, as well as a mandatory injunction requiring CHS to return the servient property to the same physical state it was in prior to the beginning of excavation.  *Id.* at 7.

As to the instant motion, CHS requests an Order compelling a supervised re-deposition of two corporate entities, as well as for reasonable attorney's fees.  The motion is opposed.

## II.   Standard of Review

Federal Rule of Civil Procedure ("Rule") 29 provides that "[u]nless the court orders otherwise, the parties may stipulate that . . . a deposition may be taken before any person, at any time or place, on any notice, and in the manner specified - in which event it may be used in the same way as any other deposition."  *Id.*  Moreover, the Court must approve of such stipulations where they might "interfere with the time set for completing discovery . . . or for trial."  Rule 29(b).

Federal Rule of Civil Procedure ("Rule") 30 provides that a party must request leave of the court to take any deposition when "the deposition would result in more than 10 depositions being taken under this rule." Rule 30(a)(2). Under Rule 30, a party may request the deposition of a corporate representative. *Id.* at 30(b)(6). "The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." *Id.*

Although depositions are customarily limited to 7 hours, "[t]he court must allow additional time consistent with Rule 26(b)(2) . . . if the deponent, another person, or any other circumstance impedes or delays the examination." Rule 30(d)(1). Further, Rule 30(d)(2) provides various procedural mechanisms for limiting a deposition. "The court may impose an appropriate sanction . . . on person who impedes, delays, or frustrates the fair examination of the deponent." Finally, Rule 30(d)(3) provides for termination of a deposition:

> At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably . . . oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

Rule 30(d)(3)(A). Upon termination of a deposition, "the deposition may be resumed only by order of the court where the action is pending. Rule 30(d)(3)(B). When a deponent fails to answer question, a party may move for an Order compelling responses to the same. Rule 37(a)(3).

However, Rule 30, like other discovery rules, is also subject to the deadlines set forth in the Court's Rule 16 Scheduling Order. Rule 16(b)(4), which provides that deadlines in such a schedule "may be modified only for good cause and with the judge's consent." Rule 16(b)(4). The Fifth

3

Circuit has "interpreted Rule 16(b)(4)'s 'good cause' standard to require the movant to 'show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Puig v. Citibank, N.A.*, 2013 WL 657676, at *5 (5th Cir. Feb. 22, 2013) (quoting *S & W Enterprises, L.L.C. v. Southtrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003). *See also United States v. St. Bernard Parish*, Nos. 12-321, 12-322, 12-325, 2013 WL 209025, at *1 (E.D. La. Jan. 17, 2013) (Berrigan, J.) (finding no good cause where plaintiff failed to show diligence where it neglected to take a witness' deposition in the seven months allocated for discovery).

Finally, Courts should apply the Rules "to secure the just, speedy and inexpensive determination of every action." Rule 1.

## III.    Analysis

### A.    Timeliness of Motion

In this case, all discovery was to be completed by February 25, 2013, a deadline which was later extended to March 7, 2013. (R. Docs. 28, 50). The Court notes initially that based both the parties' filing into court as well as submissions of emails into the record during oral argument, CHS had been attempting to arrange Industrial Pipe's 30(b)(6) deposition as early as February 5, 2013, made a series of attempts to schedule the deposition, and that the parties ultimately had agreed to take the deposition in question on March 19, 2013, which was after the discovery deadline had passed.

Despite CHS' failure to take the deposition inside the time allotted for discovery, Rule 29 stipulations can plainly be used by parties may take depositions outside of court-imposed deadlines. *See Certain Underwriters at Lloyd's London v. Garmin International, Inc.*, 2012 WL 4383261, at

*2 (D. Kan. Sept. 25, 2012).  However, such a stipulated agreement must be sufficiently identified. *See In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001).  Once sufficiently identified, courts police such depositions according to their terms and utilize Rule 30 precepts for any conditions to which the parties did not explicitly stipulate.  *See Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460, 464-65 (11th Cir. 1996).  Notably, where parties stipulate to the taking of depositions outside the Court's discovery deadline, such consent may inform a Court's decision on whether or not to award a re-deposition.  *See Sadler v. Acker*, 263 F.R.D. 333 (M.D. La. 2009).

At oral argument, counsel for Plaquemines did not contest the assertion that the deposition was arranged on a consensual basis; nevertheless, he objected at oral argument that the deposition came "too late."  Having found that CHS has now sufficiently identified the parties' Rule 29 stipulation to take the depositions outside the time allotted in the Court's Scheduling Order, Plaquemines' objection must be overruled.  Allowing Plaquemines to now argue that the re-deposition should not occur because the deadline passed *before* the stipulated deposition occurred would eliminate the force of the stipulation for all practical purposes.

At oral argument, Plaquemines also objected that trial would occur on April 15, 2013. However, the parties' stipulation need not be set aside due to its proximity to trial.  As noted above, Rule 29 requires the Court to set aside a stipulation when it might "interfere with the time set for completing discovery . . . or for trial."  Rule 29(b).  Here, the deposition itself occurred on March 14, 2013, and although the Court denied CHS' motion to expedite, it did not overrule the stipulation. The Court further finds that the re-deposition can be completed prior to trial.  Therefore, Plaquemines' objection to the deposition is overruled to the degree it asserted proximity to trial as

5

a basis for its request.

**B.     Relevance of Depositions to This Case**

In support of the motion, CHS argues that on March 14, 2013 it noticed the deposition of two third parties: TKS Ventures, L.L.C., ("TKS") and Industrial Pipe, Inc., ("Industrial Pipe"), and that on March 19, 2013 Stewart appeared as the 30(b)(6) witness for both parties.  (R. Doc. 55-1, pp. 1-2).  CHS argues that the purpose of these depositions was to ascertain whether Stewart or other third parties had "improperly collaborated with JAH during SLE's bankruptcy proceeding."  *Id.* at 2. CHS' deposition notice to Industrial Pipe explicitly stated that CHS sought testimony regarding "The use of cell phones paid for by Industrial Pipe."  (R. Doc. 55-1, p. 15).

During the deposition, CHS questioned Stewart as to his use of a mobile phone which Industrial Pipe paid for, and which Plaquemines argued at oral argument that Stewart used to make communications for all of his businesses.  As such, CHS stated at oral argument that Industrial Pipe's phone records could be used to track Stewart's whereabouts and list of incoming and outgoing calls around the time of the bankruptcy proceeding, to better determine whether he had in fact "improperly collaborated" with JAH.

In opposition, Plaquemines argues that CHS' motion is a "needless waste of judicial resources."  (R. Doc. 68, p. 1).  Plaquemines argues that the March 19, 2013 deposition was the third time Stewart had been deposed in this matter: he was first deposed as a representative of SLE in August 2012, and again in his personal capacity in November 2012.  *Id.* at 2.[3]  Plaquemines also argues that at Stewart's November 2012 deposition, its counsel requested that CHS ask Stewart "all

---

[3]Plaquemines did not provide specific dates for these prior depositions in its motion.

questions related to TKS because at that time CHS was already in possession of all documents which were responsive to a subpoena CHS had issued to TKS." *Id.*

Plaquemines argues that at the March 19, 2013 deposition, it became clear that CHS had no intention of asking Stewart questions related to his relationship with either TKS or Industrial Pipe, but that instead CHS wished to take a "second shot" at deposing Stewart in his individual capacity, as well as in his representative capacity for "one of the previously deposed companies." *Id.* at 3. Plaquemines points out that at the deposition Stewart indicated that he uses the same phone line for all of his businesses, and that although CHS questioned Stewart about the use of his phone, it never asked Stewart "whether any of the telephone calls he referred to were made or received on behalf of TKS or Industrial Pipe." *Id.* at 4 (emphasis omitted).  Plaquemines reiterated these contentions at oral argument.

The Court first notes that although Stewart had been deposed previously in this case, he appeared in different capacities, and CHS was entitled to collect information relevant to their case from a deponent who was offered to provide testimony in different capacities.  Moreover, CHS has obtained new evidence of Stewart's phone records since the time it first deposed him, and Plaquemines had consented to the deposition.

The Court also notes that the discovery sought in the deposition is relevant.  The servitude which Plaquemines seeks to enforce against CHS in this lawsuit was at one time conveyed to new owners through a bankruptcy bidding process, the integrity of which CHS argues was compromised. According to CHS, the bankruptcy process was compromised when Stewart, or a company he controls, colluded with JAH Enterprises, the ultimate highest bidder of the bankruptcy process. CHS

7

argues that Stewart's mobile phone records may provide insight into the degree of Stewart's involvement, if any, in the collusion.

Plaquemines admits that Stewart's phone is paid for by Industrial Pipe, but argues that because Industrial Pipe is not a party to this case, its phone records are not discoverable.  However, the fact that Industrial Pipe is not a party to this case is of no moment when Stewart in fact may have used the phone to make communications directly at issue in this lawsuit.  Since Industrial Pipe pays Stewart's bill and controls access to the phone's records, CHS is entitled to depose Stewart about the conversations or telephone calls that are reflected on Industrial Pipe's Verizon telephone statement.

The court held, however, that a redeposition of TKS was warranted as TKS, which Plaquemines argued was controlled by Stewart, is now a 50% owner of the servitude rights. Although Plaquemines argued that TKS acquired this ownership after the bankruptcy bidding process, the Court found that the proximity between the transactions in question made the questioning of Stewart, as TKS' 30(b)(6) witness, relevant in this case.

##  C.     Deposition Conduct

Having found that the information sought in the first deposition was relevant, the next issue is whether Plaquemines' deposition conduct was sufficiently egregious to warrant a re-deposition.

CHS argues that during the deposition, Plaquemines' counsel "engaged in a variety of improper and impermissible acts" which resulted in the premature termination of the deposition. *Id.* at 3-4.  Specifically, CHS argues that Plaquemines' counsel (1) impermissibly directed the deponent not to answer questions; (2) threatened CHS's counsel; (3) repeatedly interrupted the

deposition mid-question to engage in off-the-record argument; (4) made a series of speaking objections despite stipulations; and (5) began his own questioning out of turn, appeared to begin testifying on his own behalf, and allowed co-counsel to interject during the questioning of the deponent. *Id.* at 4-5.

In opposition, Plaquemines argues that "a complete reading of the deposition demonstrate[] that . . . counsel's objections were limited to objections to questions that were asked in previous depositions." (R. Doc. 68, p. 3). However, Plaquemines does not contest that counsel unilaterally "broke off" the deposition to consult with Stewart, stated that "anything is possible" during the deposition, and then accused opposing counsel of acting unprofessionally. *See* (R. Doc. 55-1, pp. 47, 64-65). This conduct prompted CHS to shut down the deposition and file the instant motion.

"During the taking of a deposition the witness has, *in general*, the same rights and privileges as would a witness testifying in court at trial." 8A Wright, Miller, and Marcus, Federal Practice and Procedure § 2113 (2d ed. 1994) (emphasis added). "Conduct that is not permissible in the courtroom during the questioning of a witness is *ordinarily* not permissible at a deposition." *Landers v. Kevin Gros Offshore, L.L.C.*, No. 08-1293, 2009 WL 2046587, at *1 (E.D. La. July 13, 2009) (quotation omitted) (imposing sanctions after witness had been unsuccessfully deposed three times).

This authority suggests a degree of pliability of conduct during a deposition as opposed to during a trial; moreover, upon review the transcript is riddled with extended arguments from both

CHS and Plaquemines. *See, e.g.*, (R. Doc. 55-1, pp. 36-40, 48-49, 54-62).[4]  However, Plaquemines'

statements are of a considerably more questionably character, as they containing barbs such as "[d]o

not talk over me or I'm going to throw you out of the room."  (R. Doc. 55-1, p. 56).

Further, Plaquemines' counsel also accuses CHS' counsel of being "obnoxious and

argumentative," and that he "need[ed] to start acting more professionally." *Id.* at pp. 61, 65.

Plaquemines' counsel characterizes all of these statements as "objections" when he states that

"[w]hen another lawyer speaks, that's an objection." *Id.* at 64.  However, such "objections," taken

as a whole, would never be tolerated during the course of a trial and therefore violate Rule 30(c)(2).[5]

Finally, counsel for Plaquemines took several "breaks" during the deposition; at oral

argument he stated that during one of these "breaks" he spoke briefly with his client.  Although

Plaquemines' counsel stated at oral argument that he believed such conduct was allowable, in fact

the conduct is impermissible under Rule 30.[6]

Taken as a whole, the Court finds that the deposition transcript reflects conduct far in excess

of what might be allowed at trial, and which plainly impeded the full and fair examination of Stewart

as the 30(b)(6) representative for either Industrial Pipe or TKS.  As such, CHS' 30(d)(3) motion was

---

[4]*See Bordelon Marine, Inc. v. F/V KENNY BOY*, No. 09-3209, 09-6221, 2011 WL 164636, at *5-*6 (E.D. La. Jan. 19, 2011) (finding violation of Rule 30(c) where the majority of objections were inappropriate, and even where both parties had engaged in inappropriate conduct).

[5]Rule 30(d)(3) provides that "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *Id.*; *see Jones v. J.C. Penny's Department Stores, Inc.*, 228 F.R.D. 190, 196-98 (W.D.N.Y. 2005) (finding that repeated interruptions of questioning, as well as suggestive remarks made in response to questions posed to deponent, violated Rule 30).

[6]*See South Louisiana Ethanol, L.L.C. v. Fireman's Fund Insurance Co.*, No. 11-2715, 2013 WL 1196604, at *7 & n.9 (E.D. La. Mar. 22, 2013) (citing *Hall v. Clifton Precision*, 150 F.R.D. 525, 528-29 (E.D. Pa. 1993).

appropriate in the circumstances, and a redeposition of Stewart is warranted.

**D.    Scope of Redeposition**

The next issue is the appropriate scope of the re-deposition.  CHS originally noticed Industrial Pipe's 30(b)(6) deposition for the following topics:

1. Corporate history of Industrial Pipe.
2. Any transaction between Industrial Pipe and Plaquemines Holdings.
3. The use of cell phones paid for by Industrial Pipe.
4. Any communications between Industrial Pipe and Plaquemines Holdings.
5. Any communications between Industrial Pipe and SLE.
6. Any communications between Industrial Pipe and JAH, Inc.
7. Any communications between Industrial Pipe and Jeffrey Henderson.
8. Any communications between Industrial Pipe and Janet Cagely.
9. Any communications between Industrial Pipe and Kennet F. Stewart.

(R. Doc. 55-1, p. 3).  The Court notes that in a February 21, 2013 email CHS told Plaquemines that it intended to depose Industrial Pipe on "topics and information that we have received since the last round of depositions."  Elsewhere, CHS states that with respect to the depositions, "[w]e do not intended to re-tread any old info.  We need some answers regarding the materials recently received from Verizon, which are for phones held in the account name of Industrial Pipe.  The Verizon records were received only after the last time after we were able to depose Mr. Stewart."  The Court finds that because the emails clearly limit the scope of the re-deposition to "materials recently received from Verizon," CHS should be entitled to a re-deposition only of the calls and conversations reflected on the Verizon telephone statement, which appear as item no. 3, which were not previously covered at the March 19, 2013 deposition.  To the degree such an inquiry overlaps with the other numbered inquiries, it should also be allowed.

Similarly, CHS originally noticed TKS' 30(b)(6) deposition for the following topics:

11

1. Corporate history of TKS
2. Any transaction between TKS and Plaquemines Holdings.
3. Any documents related in any way to any transaction between TKS and Plaquemines Holdings.
4. Any communications between TKS and Plaquemines Holdings.
5. Any communications between TKS and SLE.
6. Any transaction between TKS and SLE.
7. Any transaction between TKS and Kennet F. Stewart.
8. Any actions taken by TKS related any bid on SLE's property in the Bankruptcy Court.

(R. Doc. 55-1, p. 10).  In a February 21, 2013 email CHS told Plaquemines that "we intend to get answers from [TKS'] corporate representative relative to the transaction with PH that Stewart wasn't individually able to address."  The Court finds that based upon the parties' statements at oral argument, CHS is entitled to re-depose Stewart as to all topics listed in the deposition notice which were not previously covered at the March 19, 2013 deposition.

### E.   Timing of Redeposition

The next issue is when the re-deposition should occur. At oral argument, Plaquemines indicated that Stewart was not available to take a redeposition on Friday.  The Court found that given the upcoming trial, and given the upcoming trial, the fact that Plaquemines did not indicate that another 30(b)(6) witness for either Industrial Pipe or TKS Ventures was available to adequately discuss the topics noticed in the deposition, and the fact that time is of the essence, the Court orders Stewart to appear in the undersigned's courtroom on Friday, April 12, 2013, at 2:00 p.m.  The Court will supervise the deposition.

### F.   Attorney's Fees

CHS also requests an award of reasonable attorney's fees in filing the instant motion.  (R. Doc. 55-1, p. 1).  The plain language of Rule 30(d)(2) provides that the Court may impose on a party

12

who impedes a deposition "an appropriate sanction - including the reasonable expenses and attorney's fees incurred by any party." *Id.*; *see also Howell v. Avante Services, LLC*, No. 12-293, 2013 WL 824715, at *6 (E.D. La. Mar. 6, 2013) (noting that courts have interpreted the phrase "appropriate sanction" in Rule 30).

In this case, the Court finds that Plaquemines' counsel's conduct led to the termination of the deposition, which necessitated both the filing of the instant motion, as well as a re-deposition. As such, in exercise of its "broad" discretion under Rule 30 to fashion an appropriate remedy, the Court finds that imposing reasonable attorney's fees and costs against Plaquemines for both actions is reasonable in this instance. *See South Louisiana Ethanol*, 2013 WL 1196604, at *9-*10.

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that Defendant, CHS, Inc.'s, ("CHS") **Motion to Compel and for Judicial Supervision of Deposition (R. Doc. 55)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Kennett F. Stewart, ("Stewart") is ordered to appear **in person** to testify as a 30(b)(6) representative for Industrial Pipe, Inc. ('Industrial Pipe") and TKS Ventures, LLC ("TKS"), on Friday, April 12, 2013, in the undersigned U.S. Magistrate Judge's Courtroom, located at 500 Poydras Street, Room B-431, New Orleans, Louisiana.

**IT IS FURTHER ORDERED** that CHS' motion for attorney's fees is **GRANTED** as to the reasonable attorney's fees and costs arising in connection with the filing of this motion and the re-deposition of Industrial Pipe's 30(b)(6) witness and TKS' 30(b)(6) witness.  CHS shall file a motion to fix attorney's fees into the record by **Wednesday, May 1, 2013**, along with: (1) an

13

affidavit attesting to her attorney's education, background, skills, and experience; (2) sufficient evidence of rates charges in other cases by other local attorneys with similar experience, skill and reputation; and (3) the documentation required by Local Rule 54.2.  Any opposition to the fee application shall be filed no later than **Wednesday, May 8, 2013**, and the motion shall be heard on that date **without oral argument.**

New Orleans, Louisiana, this 11th day of April 2013.

**KAREN WELLS ROBY**

**UNITED STATES MAGISTRATE JUDGE**

cc: Hon. Helen Berrigan
U.S. District Court
Eastern District of Louisiana

14