UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PLAQUEMINES HOLDINGS, L.L.C.                    CIVIL ACTION

VERSUS                                          NO. 11-3149

CHS, INC.                                       SECTION "C" (4)

<u>ORDER AND REASONS</u>

This matter comes to the Court, on the plaintiff, Plaquemines Holdings' ("PH's") Motion to Amend Opinion for Clarification, pursuant to Rule 59(e). Rec. Doc. 127. For reasons articulated more fully below, the motion is GRANTED. The Court will amend its September 9, 2013 Opinion and corresponding judgment for clarification and correction purposes.

**I. Facts and Procedural History**

PH initiated this cause of action, seeking a declaration of its right to construct, operate, and use a dock facility, under the Servitude Agreement ("SA") entered into by the parties' predecessors-in-interest. *See* Rec. Doc. 1-1 at 7-8. PH further sought to enjoin the defendant, CHS, from constructing a retaining pond that allegedly interfered with the enjoyment of a servitude benefitting its immovable property, in addition to praying for any other relief to which it was entitled under law and equity. *Id.* By the time of trial, PH had proposed two dock designs, Options 1 and 2. *See* Pretrial Order, Rec. Doc. 66 at 7. Thus, in the pretrial order, PH sought an order (1) declaring that the proposed designs were compliant with the SA, (2) enjoining CHS from interfering with or objecting to construction of the dock in either location, and (3) enjoining

1

CHS to cooperate or assist in the permit process with the Army Corps of Engineers. *Id.* at 8.

The Court held a bench trial and, after conducting a site visit, entered an opinion and judgment declaring PH's right to build a barge dock but denying PH's requested injunction regarding the construction of the retaining pond. Rec. Docs. 120, 122. In its opinion, the Court explained that Option 1 would require dredging or removing some of the bank and breaking up concrete in the revetment, whereas Option 2, which was further from the river bank, would prevent CHS from accessing one bay or lane of its barge cover station when PH's dock was in use. *Id.* at 12-13. The Court also noted the requirements imposed on the placement of the barge dock by the SA, including that it be "in line" with the existing company dock, in a location that will not unreasonably interfere with barge and ship traffic to CHS's elevator; that it not occupy any more of the servitude area than is reasonably necessary to accommodate an appropriately sized dock; and that it be subject to CHS's preapproval, which CHS could not unreasonably withhold. *Id.* at 13.

The Court analyzed PH's right to construct under the SA as follows:

. . . PH must build a dock that is in line with the existing CHS dock and will be the least invasive to CHS' operations including, if possible, the barge cover station. PH must modify either Option 1 or Option 2 to ensure that the outer, river-side (or outboard as opposed to land-facing) edge of the proposed dock follows the same line as the outer, river-side edge of the existing CHS dock. Because PH must build the dock that is least invasive to CHS' operations, if the Corps will permit PH to build the dock in Option 1, it must do so. If the Corps shall not permit PH to build the dock in Option 1, PH may build the dock in Option 2. If both designs are rejected by the Corps. CHS shall work with PH to find a design that meets the needs of the Corps. Any design must be for a dock that has an outer, river-side edge that matches up with the existing CHS dock in

distance from the bank. If there is no dock that can obtain permit while the barge cover station remains in place, CHS must remove the barge cover station because it was not present when the SA was granted. If CHS wishes, it may propose another area where PH may build its dock as long as that area is accessible from PH's facility. *Id.* at 14-15.

The Court ordered that PH "must build a dock that is in line with the existing dock and will be the least invasive to CHS' operations as specified in this Order and Reasons." *Id.* at 20. Because the SA required PH to obtain CHS's preapproval to constructing any barge dock, which CHS could not withhold unreasonably, the Court ordered that CHS "shall not object to [PH's] request to build a barge dock and shall either permit PH to build a barge dock in the existing servitude area, or shall provide PH with another equally convenient location for the barge dock as specified in this Order and Reasons." *Id.*; *see also id.* at 13 ("[B]ecause CHS may not unreasonably withhold approval, the Court orders CHS to approve PH's plans as long as they are in accordance with what is stipulated in this Order and Reasons.").

Judgment was entered on September 10, 2013. Rec. Doc. 122. CHS filed a notice of appeal the same day. Rec. Doc. 123.

PH now moves the Court to amend the Opinion issued on September 9 to further and/or alternatively specify the location for its dock. Rec. Doc. 127. PH argues that the Opinion is confusing in its insistence that Options 1 and 2 be modified to place the riverside edge of the dock in line with riverside edge of CHS's existing dock because such modification would render the options indistinguishable and effectively more burdensome on CHS. It questions whether the Court intended to subject Options 1 and 2 to the "in line" requirement and seeks an amended

3

opinion setting forth different limitations for its dock's location.

CHS argues that this Court lacks jurisdiction to grant the motion to amend, and that even if it did not, the motion should not be granted because the in-line requirement stems from the SA. In its surreply it accuses of CHS of raising additional arguments and evidence that are not properly before the Court. The Court addresses these arguments in turn.

**II. Discussion**

<u>A. Jurisdiction</u>

With narrow exceptions, "[a] district court loses all jurisdiction over matters brought to the court of appeals upon the filing of a notice of appeal." *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 190 (5th Cir. 1999). The U.S. Supreme Court has explained, "[t]he filing of a notice of appeal is an event of jurisdictional significance-it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 402 (1982).

Nevertheless, it is well-settled that a Rule 59(e) motion suspends the finality of judgment and with it the effectiveness of a previously-filed notice of appeal. *See, e.g., Ross v. Marshall*, 426 F.3d 745, 752 (5th Cir. 2005) ("Because Kent Mathews' timely filed his Rule 59 motion to alter of amend judgment, his motion suspended the effectiveness of his earlier filed notice of appeal until September 15, the date on which the district court entered [it's] order denying the motion."); *see also* 11 Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2821 at 279-81 (2012) (distinguishing between Rule 59(e) motions and other motions under Rules 59

4

and 60 in terms of suspensive effect on notices of appeal).[1]

CHS argues that Fed. R. Civ. P. 62.1 and Fed. R. App. P. 12.1, which provide for the deferred or advisory consideration of certain motions filed during the pendency of appeal, compel a different conclusion. However, those provisions clearly contemplate the district court's authority to consider and grant timely-filed post-judgment motions under Fed. R. App. P. 4. The motions that those rules address are motions that do not fall under Rule 59(e). *See* Fed. R. Civ. P. 62.1 ("Appellate Rule 4(a)(4) lists six motions that, if filed within the relevant time limit, suspend the effect of a notice of appeal filed before or after the motion is filed until the last such motion is disposed of. The district court has authority to grant the motion without resorting to the indicative ruling procedure.").

Although a Rule 59(e) motion temporarily suspends appellate jurisdiction over the case, it does so only for those issues that are genuinely cognizable in such a motion. Review under Rule 59(e) theoretically extends to any motion that would alter the substance of a judgment if

---

[1]Under a previous version of Fed. R. App. P. 4, a notice of appeal filed before a timely motion under Fed. R. Civ. P. 59(e) was completely null. *See, e.g, Griggs*, 459 U.S. at 61, 103 S. Ct. at 403 (noting that following 1979 amendments to Rule 4, timely filing of a Rule 59(e) motion caused any previously filed notice of appeal to "self-destruct" as premature). The 1993 amendment to Rule 4 allows such premature notices to be construed as suspended rather than null. *See generally Burt v. Ware*, 14 F.3d 256, 259-60 (5th Cir. 1994) (discussing the history of Fed. R. App. P. 4); 11 Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2821 at 280 (noting the suspensive effect of motions to amend or alter judgment after 1993 amendments); 16A Charles Alan Wright, *et al.*, Federal Practice and Procedure § 3949.1 at 54 (2008) (same). It is for this reason that the clerk of court is now required to send to the Court of Appeal any post-judgment motions filed after the notice of appeal. Fed. R. App. P. 3(d); 16A Charles Alan Wright, *et al.*, *supra* § 3949.1 at 54.

granted. *See In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002) ("A Rule 59(e) motion is a motion that calls into question the correctness of a judgment."); *N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 918 (5th Cir. 1996) (Rule 59(e) requires applies to motions that "call into question the correctness of the judgment" and are served within the relevant time period); 11 Charles Alan Wright, *et al.*, *supra* § 2810.1 at 152 ("Rule 59(e) covers a broad range of motions and the only real limitation on the type of motion permitted is that it must request a substantive alteration of the judgment . . . .").

The judgment in this case granted PH "a declaratory judgment as to the issue of the barge dock." Rec. Doc. 122. The details of the declaration, including where and how the barge dock could be constructed, were contained in the Court's opinion. Therefore that portion of the opinion serves as part of the judgment for Rule 59(e) purposes, and there is jurisdiction to hear this motion.

B. Merits

Relief under Rule 59(e) is limited to correction for manifest errors of law or fact or in light of newly discovered evidence. *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). It is not an appropriate procedural vehicle to pursue reconsideration of arguments previously rejected. *Id.* Similarly, it cannot be used to argue new theories of the case that should have been presented before judgment issued. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990). Reconsideration of a judgment after its entry is an extraordinary remedy to be deployed sparingly. *Templet*, 367 F.3d at 479. Relief is appropriate where failure to grant would

6

allow a miscarriage of justice to persist or leave a "genuine ambiguity" in the judgment unresolved. *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir. 1986).

Although PH has only argued that the declaratory judgment in its favor should be modified, review of the opinion and the judgment reveal the need for reconsideration of the injunctive relief granted in PH's favor, as well. This Order therefore addresses both elements of the relief awarded PH at trial.

### 1. Declaratory Judgment

PH argues that the portion of the Opinion describing its rights to construct a barge dock under the SA is confusing or ambiguous in its approval of  Options 1 and 2 and interpretation of the "in line" requirement. The Court agrees and will therefore amend its Opinion to address this issue as specified below.

The purpose of a declaratory judgment action is to clarify the rights of the parties so as to relieve them of uncertainty regarding the legal risks of conduct they anticipate in the future. *Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 505 (5th Cir. 1988). When declaring a party's rights under a contract or agreement, the Court must be bound by the intent of the contracting parties, as expressed through the plain language of the instrument. *See Campbell v. Melton*, 01-2578 (La. 5/14/02), 817 So. 2d 69, 74-75 ("The interpretation of a contract is the determination of the common intent of the parties with courts giving the contractual words their generally prevailing meaning unless the words have acquired a technical meaning."). The parties to the SA made clear that they only intended to authorize construction of a dock  that was "in

line" with the existing dock on the servient estate holder's property. Trial Exh. 1, § 3.2 at 6.

Thus, in attempting to declare PH's rights under the SA to place a barge dock in the servitude

area, the Court was obligated to interpret this language and apply it to the case at bar. Drawing

on the evidence and argument in the record, the Court concluded that docks were in line with one

another under the SA when their outboard edges were in the same line. Rec. Doc. 120 at 14.[2]

For the first time in its reply brief to the CHS's opposition to this motion, PH raises the

argument that this Court should have interpreted "in line" as used in the SA to mean parallel,

based on the testimony of its soils engineer and in light of alleged burdens on ship and barge

traffic to the existing dock. Rec. Doc. 133 at 4.The first part of this argument is unpersuasive

because testimony cannot be used to prove the meaning to be given contractual language where,

as here, it bears no apparent relationship to the intent of the contracting parties. *Cf. Condrey v.*

*SunTrust Bank of Georgia*, 429 F.3d 556, 563 (5th Cir. 2005) ("parol evidence is admissible to

clarify the ambiguity or to show the intention of the parties"). Although the second part of this

argument, regarding relative burdens of the dock based on its location, is potentially more

persuasive, as explained below, it has been waived insofar as it ever had merit, by PH's failure to

---

[2] In the portion of the Opinion addressing the "in line" requirement, the Court actually gave two different definitions for "in line." The first was following the same line as the riverside or outboard edge of the existing dock. Rec. Doc. 120 at 14. The second was matching the outer riverside edge of the dock in terms of distance from the bank. *Id.* Insofar as those descriptions might conflict in practice, the Court hereby clarifies that the former is the appropriate definition of "in line." That is, under the SA, the riverside edge of any new dock by PH must occupy exactly the same straight line in three-dimensional space as the riverside edge of the existing dock.

present it at some time before the reply memorandum on its motion to alter or amend judgment. *Simon*, 891 F.2d at 1159; *see also Conway v. United States*, 647 F.3d 228, 237 n.8 (5th Cir. 2011) ("Arguments raised for the first time in a reply brief are forfeited.").

As the Court has already stated, the issue of how to interpret the "in line" language in the SA was a central one in this case from the outset. *See* Pretrial Order, Rec. Doc. 66 at 16. PH, somewhat inexplicably, failed to argue that "in line" meant something other than what the Court interpreted. At best, PH alluded to its current argument that placing a dock "in line" with CHS's dock, under the standard definition, would so thoroughly inconvenience CHS to warrant a different definition, when it stated: "[l]ocating the dock closest to the riverbank maximizes the clearance for CHS to conduct its barge unloading operation." Rec. Doc. 115 at 9 (*citing* Testimony of Chad Poche, Tr. I:112-16).

Even if the Court were to deem this argument preserved, it would not reconsider the definition of "in line" because the evidence presented at trial did not establish that a different definition should apply. The meaning that the Court gave "in line" is the one that best comports with common sense. *See Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 12-2055, pp. 5-6 (La. 3/19/13), 112 So. 3d 187, 192 (" Most importantly, a contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance."). "In line" clearly means something more than parallel. Portions of the respective docks have to be on the same line as one another. The outboard edge, where docking occurs, is an obvious point of reference on a dock.

The evidence presented was insufficient to persuade the Court that the parties intended for an alternative definition to apply or that the definition adopted would work an "absurd consequence" in this case. *See id.* at 5, 112 So. 3d at 192 ("[E]ven when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences."). In particular, the evidence did not show that the Court's definition of "in line" would cause a conflict with the SA's requirement that any new dock not "unreasonably interfere" with traffic to the grain elevator. *See* Trial Exh. 1, § 3.2 at 6.

Although the parties introduced testimony about the burdens to CHS of Mr. Wright's design, which was roughly in line with CHS's dock, this testimony was based on CHS's continued operation of its barge cover station. *See, e.g.*, Tr. II:134 ("The configuration that was shown on the Richard Wright proposal, . . . the dock itself completely blocked the landward slip of the cover station, and a product barge at the dock would completely block the unloading slip [on] the riverward side of the cover station."); Tr. I:79 (making the same observation). This evidence had questionable relevance to the intent of the contracting parties because the cover station did not exist at the time they drafted or entered into the contract. Tr. I:32.[3] According to

---

[3]By contrast, interference with CHS's use of the barge cover station was extremely relevant and indeed persuasive of the fact that exercise of the servitude in the location that the parties originally intended "has become more burdensome for the owner of the servient estate" and would prevent him from utilizing improvements already made on the estate, such that CHS is entitled to relocate the servitude. La. Civ. Code. art 748; *Woodward v. Gehrig*, 97-1040 (La. App. 3 Cir. 2/11/98), 707 So. 2d 1322, 1324. Because the "in line" requirement dictates the location of the dock, that too is part of the location of the exercise of the servitude for purposes of La. Civ. Code art. 748.

the testimony introduced at trial, barge covering and uncovering happened in an entirely different manner before the cover station was built, and significantly, "[t]here was nothing . . . within the footprint of the barge cover station before the barge cover station was built." Tr. I:34, 35-37. In its post-trial memorandum, CHS argued that dock operations would interfere with barge and ship traffic, even if it demolished the barge cover station, but it cited no record evidence to support that argument. Rec. Doc. 116 at 20-21.

The heart of PH's current argument is that, the further the dock is placed into the river, the further out the roadway connecting it to land must extend, and the smaller the navigable portion of the servitude area is. Even if these assumptions hold true when the barge cover station is taken out of the equation, they still rely on an assumption about the height of the roadway that connects the dock to land. Mr. Cook, though not offered as an expert, testified to his belief that the problem with the roadway could be addressed by elevating it to a height under which a barge could pass. Tr. I:79-80. In short, the evidence does not establish that an "in line" dock will interfere unreasonably for purposes of the SA.

Neither Option 1 nor Option 2, as they were presented at the trial, satisfy the relevant definition of "in line." Thus, as reiterated several times throughout the Opinion, either would need to be modified to be placed in line with the existing dock, and resubmitted to CHS "in reasonable detail," before it could trigger CHS's duty to refrain from objecting unreasonably to construction. Trial Exh. 1, § 10.3 at 11.

Given that the only distinguishing feature of Options 1 and 2 was their distance from the

river bank, it was unnecessary and confusing to distinguish between them for purposes of declaring PH's right to build, as the Court did briefly at page 14 of its Opinion. As such, the Court will amend its Opinion to delete those three sentences and the accompanying footnotes.[4]

 *2. Injunctive Relief*

 The Court ordered CHS to refrain from objecting to a barge dock design that complies with the SA as the Court had interpreted it or provide an alternative location for the exercise of the servitude. Rec. Doc. 120 at 20.[5] However, this injunction was not incorporated into the Court's judgment entered immediately after. Rec. Doc. 121. When the Court described this injunction earlier in its Opinion, it subjected it to the prerequisite that PH submit to CHS a dock proposal that was on the scale of Options 1 and 2 but "in line" with the existing dock as required by the SA. Rec. Doc. 120 at 13. This proviso was omitted in the Order portion of the Court's Opinion. *Id.* at 20. The foregoing circumstances call upon the Court to, at the very least, clarify

---

[4]The passage in question states:

> Because PH must build the dock that is least invasive to CHS' operations, if the Corps will permit PH to build the dock in Option 1, it must do so. If the Corps shall not permit PH to build the dock in Option 1, PH may build the dock in Option 2. If both designs are rejected by the Corps, CHS shall work with PH to find a design that meets the needs of the Corps.

Rec. Doc. 120 at 14.

[5]Although PH did not request this injunction in its original petition, it made a general prayer for equitable relief that it subsequently modified in the pretrial order to seek this relief. *See* Rec. Docs. 1-1 at 8, 66 at 7.

the previous judgment. However, having taken the opportunity to review the language of the SA to address PH's motion to alter or amend judgment, and having considered the arguments set forth in CHS's motion for order of stay (Rec. Doc. 143), the Court will also amend the September 9, 2013 Opinion to remove its injunctions on CHS for the reasons that follow.

In theory, a dock of the dimensions of Options 1 or 2 but placed in line with the existing dock would satisfy the substantive requirements of the SA, leaving CHS with no reasonable substantive grounds upon which to base an objection. Even so, to lawfully enjoin CHS from objecting during the permit process, the Court would need to conclude that PH had already complied with the SA's substantive and procedural requirements, including that PH provide CHS with "plans and specifications in reasonable detail" for CHS's approval.  Trial Exh. 1, § 10.3 at 11.

"Reasonable detail" under the SA is the amount needed to advise the servient estate holder of what to expect from the dock's construction and operation. Although it need not consist of engineering schematics, it should be precise enough to allow CHS to estimate and mitigate costs to its business. Reasonable detail necessarily entails an estimate of the amount of the servitude area that CHS could still use for navigation purposes after PH's dock has been constructed. Because PH must still modify any design it desires to construct to place it in line with the existing dock, and this modification will affect the navigable portion of the servitude area, none of its rights under the SA have matured. Therefore, the portions of the September 9, 2013 order purporting to require CHS to adopt or refrain from certain conduct that implicates the

13

SA must be deleted.

Accordingly,

     IT IS ORDERED that the plaintiff's Motion to Amend Opinion for Clarification is hereby GRANTED. Rec. Doc. 127.

     IT IS FURTHER ORDERED that the Opinion and Judgment entered in this case are hereby VACATED. Rec. Docs. 120 & 121. The Court will enter an Amended Opinion and Judgment, consistent with this Order and Reasons.

     New Orleans, Louisiana, this 5th day of December, 2013.


                                           HELEN G. BERRIGAN
                                         UNITED STATES DISTRICT JUDGE