UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PLAQUEMINES HOLDINGS, LLC | CIVIL ACTION |
| v. | NO. 11-3149 |
| CHS, INC. | SECTION "C" |
| *And* | |
| CHS, Inc. | CIVIL ACTION |
| v. | NO. 15-1198 |
| PLAQUEMINES HOLDINGS, LLC, ET AL | SECTION "C" |

**ORDER AND REASONS**

Before this Court is Plaquemines Holdings, LLC's 28 U.S.C. §2202 Motion to Enforce Declaratory Judgment by Permanent Injunction and CHS Inc.'s Motion to Strike Plaintiff's 28 U.S.C. §2202 Request for Injunctive Relief. Rec. Docs. 155, 208. The parties oppose each other's motions, and have filed numerous supplemental memoranda laying out their positions. Rec. Docs. 173, 176, 187, 190, 193, 196, 220, 224, 226. In addition, CHS has initiated a new action centering around the same dispute over PH's servitude rights, and PH has filed a motion to dismiss the newly filed action. Civ. A. 15-1198, Rec. Doc. 5. Having reviewed the record, the law, and the arguments of the parties, the Court will GRANT IN PART and DENY IN PART the §2202 Motion to Enforce Declaratory Judgment, DENY the Motion to Strike, and GRANT the Motion to Dismiss.

1

I.      **Factual and Procedural Background**

As has been discussed in detail in the Court's Amended Opinion in this matter, Plaquemines Holdings, LLC ("PH") and CHS, Inc. ("CHS") are in a dispute over a Servitude Agreement. Rec. Doc. 150. CHS owns a tract of land along the Mississippi River and the Servitude Agreement allows PH certain access and usage rights on CHS's property. In 2011, PH initiated this action seeking a declaration of rights under the Servitude Agreement to construct a dock on the Mississippi River and to stop CHS's construction of a large retaining pond that PH alleged would prohibit use of its servitudes. Rec. Doc. 1. This action was subsequently removed to this Court. *Id*.

The Court held a bench trial on this matter on April 15 and 16, 2013. Rec. Docs. 101, 102. On December 5, 2013, the Court issued an Amended Opinion finding, *inter alia*, that PH has the right to build a dock located within the Grantee Dock Servitude Area, subject to certain limitations; that PH is obligated to submit any dock construction plans and specifications to CHS and obtain CHS' approval before beginning construction on the dock; that CHS is obligated to refrain from unreasonably withholding or delaying its approval; and that CHS is obligated to use reasonable efforts to assist PH in acquiring relevant permits. Rec. Doc. 150 at 22-23. CHS timely appealed the Amended Opinion to the United States Court of Appeal for the Fifth Circuit. *Plaquemines Holdings, L.L.C. v. CHS, Inc.*, Civ. A. No. 13-30957 (5th Cir. Jan. 16, 2015). PH did not cross appeal. *Id*.

   a. **PH's application to the Army Corps of Engineers**

Following the Court's ruling, PH reached out to CHS on December 26, 2013 to share preliminary plans for the servitude dock. CHS did not respond. Rec. Doc. 155-5. On February

2

18, 2014, PH wrote to CHS offering more detailed plans and specifications for the dock it intended to build in the servitude area. Rec. Doc. 155-6. CHS wrote back, but responded to the December 26 plans rather than the February 18 plans, and stated objections to the plan. Rec. Doc. 155-7. On March 27, 2014, PH filed a permit application with the Army Corps of Engineers (Army Corp) to build a dock in the servitude area. On September 15, 2014, CHS submitted written objection to the Army Corps. Rec. Doc. 155-9. Notably, CHS objected that the dock interfered with access to the barge cover station, even though the Amended Opinion ordered that "CHS is obligated to refrain from raising objections during the permitting process that are based solely on a proposed dock's interference with the operation of its barge cover station." Rec. Doc. 150 at 22.[1]

### b. PH's §2202 Motion

On November 4, 2014, while CHS's appeal was under submission with the Fifth Circuit, PH filed the instant 28 U.S.C. §2202 Motion to Enforce Judgment by Permanent Injunction seeking CHS's present and future compliance with the Amended Opinion. Rec. Doc. 155-2 at 1. In sum, PH sought to have the Court enter injunctions requiring the following:

1) CHS must promptly write to the Army Corps and withdraw all objections made in its September 15, 2014 letter to the Corps objecting to PH's dock permit application;
2) CHS may not implicitly or explicitly, whether directly or indirectly, communicate any objections to the Corps, or to any other permitting authority, with regard to PH's permitting and construction of the dock proposed in PH's permit application or in connection with any other future permit application for a servitude dock based on the location set forth in PH's February 18 letter to CHS;

---

[1] CHS's letter stated that PH's proposed plans would interfere with the ability of a "tug and grain barge to safely navigate and reach the landward side of the CHS ship dock." Rec. Doc. 155-9 at 1. As PH points out, the "landward side of the CHS ship dock" refers to CHS's barge cover station as it is the sole structure into which CHS barges enter. Rec. Doc. 155-2 at 6.

    3) CHS may not assert any objections to the Corps or to any other permitting authority with regard to the use of the servitude dock by PH or any PH Invitee, including Vertex Refining LA, LLC, in connection with a reconditioned motor oil operation;
    4) CHS may not take any action which prohibits or otherwise creates an impediment to PH or PH's Invitees' construction of the servitude dock;
    5) CHS may not take any action which prohibits or otherwise creates an impediment to the use of the servitude dock by PH or any PH Invitee in connection with a reconditioned motor oil operation.

*Id.* at 13.

    c. **The Fifth Circuit's Ruling**

On January 16, 2015, the Fifth Circuit issued its opinion on CHS' appeal. The Fifth Circuit affirmed the Court's Amended Opinion with two minor exceptions. Rec. Doc. 201.

First, the Fifth Circuit held that the Court's finding that "PH has the right to ship non-ethanol products, including refined motor oil . . ." was too broad in allowing any non-ethanol product. *Id.* at 9. The Fifth Circuit reformed that finding to the narrower "PH has the right to ship refined motor oil . . . ." *Id.*

Second, the Fifth Circuit reversed and vacated the Court's finding that CHS has an obligation to assist PH in obtaining a permit to construct its dock. *Id.* at 13-14. The Fifth Circuit held that CHS did not assume any obligation to assist PH in obtaining permits and that such an obligation is not merely an incidental or accessorial duty. *Id.* at 14. However, the Fifth Circuit affirmed the prohibition on CHS from lodging certain objections with the Army Corps. It stated, "The Court affirms the district court's judgment that CHS cannot object to the Corps of Engineers or any other permitting process based solely on a proposed dock's interference with the operation of CHS's barge cover station." *Id*. at 16.

Aside from those two exceptions, the Fifth Circuit affirmed the rest of the Court's Amended Opinion. *Id*.

### d. CHS's election of an alternate dock location

On January 22, 2015, CHS notified PH that it had designated an alternate location for PH's dock. Rec. Doc. 193-2. In doing so, CHS cited to the Court's Amended Opinion and La. Civ. Code art. 748. In the Amended Opinion, the Court held that, "CHS has the right to modify, relax, or alter any of the requirements dictating the location for the exercise of the Servitude Agreement." Rec. Doc. 150 at 15. The Court stated that because CHS had demonstrated that the original location of the servitude had become more burdensome to CHS and prevented CHS from making useful improvements to its estate, that CHS had the right to provide PH with an "equally convenient location" for PH's dock. *Id*. at 15-16.

CHS has designated the northernmost 405-foot portion along the Mississippi River of the parcel "D-2" as the new Grantee Dock Servitude Area. Rec. Doc. 193-2. CHS has "agreed to compensate [PH] for any legitimate cost differential in construction access and pipeline improvements for the dock at the new location." *Id.* CHS has also clarified that it intends to accommodate PH's concern for relocation of the access and pipeline servitudes. Rec. Doc. 197-1 (". . . CHS would cover the cost of additional pipeline work upon PH's demonstrating the expense, and after deducting savings in project costs.").

PH contests CHS' election of an alternate location. Rec. Doc. 194-2.

### e. Subsequent developments

On March 12, 2015, the Court held a status conference and heard from both parties on CHS's proposal to designate an alternate location for PH's dock. Rec. Doc. 202. At the conference, the parties presented the Court with maps, descriptions of the D-2 tract's location,

and arguments regarding the D-2 tract's convenience in relation to the original servitude area. The parties agreed to meet with the Magistrate Judge to attempt a settlement of the matter before litigating the issue further. *Id*. However, the parties were ultimately unable to reach a settlement. Rec. Doc. 204.

On April 14, 2015, prior to the settlement conference with Magistrate Judge North, CHS filed a new action seeking a declaratory judgment that the alternate location is equally convenient, that PH is bound to accept the new location, and that PH may not exercise its right to construct a dock in the original location. Rec. Doc. 1, Civ. A. 15-1198. PH has moved to dismiss the complaint, arguing that it raises the same issues that are already before the Court in its consideration of the Motion to Enforce Judgment and must be dismissed under the "first-to-file rule." Rec. Doc. 5-1, Civ. A. 15-1198. CHS opposes the motion. Rec. Doc. 11, Civ. A. 15-1198.

On June 3, 2015, the Army Corps granted PH the permit authorizing it to begin construction of a dock in the original servitude area. Rec. Doc. 220-2.

**II.     Law and Analysis**

a. *Mootness*

CHS contends that the Motion to Enforce is largely mooted by the Army Corps' granting of a permit to construct a dock in the original servitude location. Rec. Doc. 226 at 1. PH agrees in part, conceding that the motion is moot in several respects. Specifically, PH agrees that its original request that the Court enjoin CHS to withdraw objections to the permit application is now moot. Rec. Doc. 220 at 2. As the permit application process has concluded, the Court finds that this issue is indeed moot.

In addition, PH states that its request that the Court order CHS to refrain from communicating objections to the Corps regarding the permit application and to refrain from asserting objections to the Corps or any other permitting authority regarding the use of the dock in connection with a motor oil refinery are partially moot. *Id*. The Court agrees that to the extent that PH seeks an injunction preventing CHS from communicating new objections to the Corps in connection with the permit application, this issue is now mooted by the granting of the permit. The Court finds that the portions of the Motion to Enforce that request an injunction preventing CHS from lodging further objections with other permitting authorities is not mooted.

Finally, PH contends that the following aspects of the motion are still at issue:

(1) that CHS be ordered not to "take any action which prohibits or otherwise creates an improper impediment to PH or PH's Invitees' construction of the servitude dock; and

(2) that CHS be ordered not to "take any action which prohibits or otherwise creates an improper pediment to the use of the servitude dock by PH or any PH Invitee in connection with a reconditioned motor oil operation."

Rec. Doc. 220 at 2. The Court agrees, as the granting of the Army Corps' permit does not foreclose other avenues for CHS to object to or impede the proposed construction of the servitude dock in the original servitude area. Indeed, CHS's attempt to designate an alternate location for PH's dock constitutes a potential impediment to construction of the dock, and therefore falls under the purview of the §2202 motion. Thus, the Court finds that the §2202 motion is not mooted in its entirety, and will proceed to discuss whether PH is entitled to the relief requested. Accordingly, the Motion to Strike is DENIED.

b. *Louisiana Civil Code Article 748*

As discussed above, since the filing of the §2202 motion and following the Fifth Circuit's decision in this case, CHS has, for the first time, proposed an alternate location for the construction of PH's servitude dock. Rec. Doc. 193. CHS describes the new location ("D-2 location") as a "portion of the Mississippi River along the northernmost 405-foot portion of the parcel denominated 'D-2.'" Rec. Doc. 193-2. In addition, CHS has agreed to compensate PH for "any reasonable and demonstrated incremental cost to construct any necessary pipeline and access improvements at the new location," subject to an "offset for other savings on project cost." *Id*.

At the Court's status conference on March 12, 2012, CHS represented that the D2 location would be less expensive for the running of PH's operations, as it would allow direct truck access and the dock could be built closer to shore, rather than in-line with CHS's dock. CHS also stated that the D-2 location would require less extensive piling because the dock would be located in shallower water and could utilize existing mooring dolphins. However, CHS conceded that the relocation would require the building of an entirely new road from PH's property to the D-2 location, the extending of pipeline, and the creation of several appurtenant servitudes, the details of which would have to be worked out between the parties. Finally, CHS stated that the construction of PH's dock in the servitude area would be inconvenient for CHS because it would require CHS to halt operations for three to four months, during which time its employees would not be able to work.

PH objects that the D-2 location is not equally convenient because it is isolated from PH's property and any of the existing servitudes that PH possesses. Rec. Doc. 196 at 11. PH

argues that the D-2 location would "require that PH's lessee traverse and use property owned by CHS in ways entirely unaccounted for by the Servitude Agreement," requiring the parties to go back to the drawing board to negotiate a new Servitude Agreement. *Id*. at 12. PH adds, not without basis, that given the contentious relationship between the parties, such a negotiation could likely end up back in court. *Id*. Most importantly, PH insists that it has expended considerable time, energy, and financial resources pursuing permitting from the Army Corps. Rec. Doc. 196 at 12. PH spent roughly a year and a half to design and gain permitting. *Id*. at 8. This process would have to be restarted if CHS were allowed to designate the D-2 location for the servitude, and would require an indeterminate amount of time likely stretching well beyond an additional year to obtain a new permit.

  Under Louisiana law and this Court's Amended Opinion, CHS may designate a new location for the servitude, provided that it is "equally convenient." The issue of whether an alternate location is "equally convenient" is an issue of fact. *Id*. at 177; *Toups v. Abshire*, 979 So. 2d 616, 618 (La. Ct. App. 3d Cir. 2008); *Cathcart v. Magruder*, 960 So. 2d 1032, 1041 (La. App. 1st Cir. 2007). Louisiana courts have upheld that "equally convenient" implies "a location which is as suitable for the purpose as its predecessor." *Brown v. Bowlus*, 399 So. 2d 545, 549 (La. 1981); *Coleman v. Booker*, 94 So. 3d 174, 177 (La. Ct. App. 2nd 2012).

  Based on the evidence adduced at trial as well as the arguments of the parties and additional exhibits provided in the subsequent memoranda and at the status conference, the Court finds that the D-2 location is not equally convenient and cannot serve as an alternate location for the servitude. As PH points out, the D-2 location is removed from PH's property and from the site planned for the reconditioned motor oil facility. Rec. Doc. 196-3. Just as importantly, the site is isolated from the existing servitudes granted to PH under the Servitude Agreement. Rec. Doc.

196-3. The Court previously found following a bench trial that the existing pipeline stretching from CHS's holding pond to the site of PH's proposed dock was sufficient for transferring product from PH's facility to the barge dock. Rec. Doc. 150 at 18. The D-2 location has no such pipeline or other means that would allow PH to transport product from the site of its facility. Thus, the designation of the D-2 site would require the renegotiation of further servitudes and the planning and designing of new structures over the servitude area in order to transport product between the dock and the facility. Thus, the Court finds that the D-2 location is not as suitable as the current servitude area for the delivery and shipment of motor oil, and cannot serve as an alternate location for PH's proposed dock.

      Although CHS opines that an additional evidentiary hearing is needed to adjudicate the issue of equal convenience, the Court disagrees. In supplemental briefing, CHS argues that further discovery and a hearing is needed because the Court must consider testimony and evidence from Vertex, PH's tenant who will utilize the dock proposed by PH. Rec. Doc. 226 at 10. However, the Court finds that Vertex's financial situation and ability to utilize the servitude are irrelevant to the instant motion. The statute clearly sets forth that the issue of equal convenience is in relation to the dominant estate—in this case, PH. PH has already shown that it intends to use the existing servitude area for reconditioning and shipping motor oil and has expended considerable resources in preparing it for this purpose. For the reasons discussed above, the D-2 location is less convenient for PH's intended purpose. Whether or not PH will ultimately allow Vertex or another invitee to use the servitude does not affect the purpose of the servitude itself. Thus, CHS may not designate the D-2 tract as an alternate location for the servitude area.

### c. *Unreasonable delay*

In addition to the limitation of "equal convenience" set forth by Louisiana statute, this Court's Amended Opinion also required that once PH submitted its dock construction plans to CHS in reasonable details, that CHS was "obligated to refrain from unreasonably withholding or delaying its approval." Rec. Doc. 150 at 21-22.

PH provided CHS with preliminary plans on December 26, 2013. Rec. Doc. 196 at 3. PH submitted finalized plans to CHS on February 18, 2014. *Id*. CHS withheld approval of the plans for another eleven months before presenting PH with the D-2 tract on January 22, 2015. Rec. Doc. 193-2. CHS continues to withhold its approval of the dock construction plans.  A delay of eleven months is unreasonable in these circumstances, as PH was required to initiate the lengthy process of seeking approval from the Army Corps. Also, nothing prevented CHS from designating the alternate location at an earlier time. While CHS is certainly entitled to protect its interests through an appeal to the Fifth Circuit, this does not require PH to keep its activities at a standstill and sit on its own rights during that time. Although the Fifth Circuit ruled that CHS was under no obligation to assist PH in its application for the Army Corps' permit, it did not disturb the portion of the Amended Opinion stating that CHS could not withhold its approval or unreasonably delay PH's construction. In asserting at this late stage the option of relocating the servitude, CHS has acted in contravention to the Court's order. Although La. Civ. Code Art. 748 does not place a deadline on the serviant estate's right to designate an alternate, equally convenient location, CHS is also bound by this Court's Amended Opinion. Thus, the Court finds that CHS's insistence on relocating the servitude area violates the Amended Opinion and hereby enjoins CHS from designating an alternate location for PH to exercise its rights under the Servitude Agreement. However, the Court finds that PH's request that the Court enjoin CHS

from tak[ing] any action which prohibits or otherwise creates an impediment to the construction and use of the servitude dock to otherwise be overly broad and indeterminate. Certainly, CHS is bound to abide by the terms of the Amended Opinion, this order, and the Fifth Circuit's judgment on appeal. However, the Court will refrain from issuing overly broad injunctive relief.

### d. Motion to Dismiss

CHS has filed a separate action based on the same underlying facts at issue in the §2202 Motion to Enforce Judgment ("the newly filed action"). In that complaint, CHS has named PH as defendant and alleges the existence of the Servitude Agreement, much of the procedural history of the instant action, and CHS's offering of the D-2 tract as an alternate servitude area. Rec. Doc. 1, Civ. A. No. 15-1198. In an amended complaint, CHS added as additional defendants Vertex Energy, Inc., and Vertex Refining LA, LLC ("Vertex"), which are PH's lessees. PH has moved to dismiss this action, arguing that under the "first-to-file rule," the Court may refuse to hear a case if the issues substantially overlap with those of an earlier filed case. Rec. Doc. 5-1 at 11. The "first-to-file rule" provides that, "In all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929-30 (3rd Cir. 1941) (quoting *Smith v. McIver*, 22 U.S. 532, 535 (1824). The Third Circuit reasoned that "[t]he party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter." *Id*. Thus, a district court may enjoin the parties before it from filing separate lawsuits over the same subject matter. *Id*. The first-to-file rule is followed in the Fifth Circuit. *See, e.g. West Gulf Maritime Association v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985).

CHS argues that the first-to-file rule applies only when related cases are pending before two different federal courts, rather than before the same court as is the case here. Rec. Doc. 11 at 9. However, under Fifth Circuit case law, "the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999). "The 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Id.* (quoting *Sutter Corp. v. P & P Industries, Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). Thus, it is within this Court's discretion to consider dismissal of CHS's action.

The Court finds that dismissal of the newly filed suit is appropriate, as the facts and disputes substantially overlap with those in the earlier filed suit. Although CHS contends that the question of whether it may designate D-2 for the servitude dock is not a justiciable controversy in the earlier action, CHS takes an overly narrow view of a district court's power in ensuring that the terms of declaratory or injunctive relief are followed. Rec. Doc. 11 at 10. The Fifth Circuit has held, "It is well settled that the issuing court [of injunctive relief] has continuing power to supervise and modify its injunctions in accordance with changed conditions." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407-08 (5th Cir. 1971). The Fifth Circuit elaborated: "[A]n injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief." *Id.* Thus, the Court retains the ability to enforce the terms of its Amended Opinion, including whether the designation of the D-2 track as an alternate location for PH's dock constitutes an unreasonable delay.

13

Moreover, the Court finds that CHS seeks in the new action to litigate issues that the Court has resolved in connection with the earlier action or that are currently before the Court in the §2202 motion. Specifically, Count I of CHS's Amended Complaint requests that the Court declare that CHS is entitled to declaratory judgment that the designation of the D-2 tract is equally convenient and that PH is bound to accept the new location. Rec. Doc. 10, Civ. A. No. 15-1198. As discussed above, the Court has found that the D-2 tract is not equally convenient.

CHS also seeks a declaration that neither PH nor Vertex may enter the Servitude Area "for any purpose except in connection with a used motor oil refinery or other qualifying Plant on Holdings' property." *Id*. at 13. The Court has already ruled on this issue in its Amended Opinion, finding that PH has the right to permit its lessee to use and access any dock constructed pursuant to the Servitude Agreement. Rec. Doc. 150 at 22-23. The Fifth Circuit has also rendered judgment, finding that PH has the right to produce and ship refined motor oil on the dominant estate, using a barge dock constructed in the Servitude Area. Rec. Doc. 201 at 9-10. The Fifth Circuit has also stated that PH's lessee is "entitled to access to CHS's property (to the extent authorized by the Servitude Agreement) for its legitimate needs in operating the Plant." *Id*. at 11. The Court finds that CHS's claim in Count II merely rephrases what has already been considered and ruled upon by both this Court and the Fifth Circuit.

Finally, Count III asks that the Court enjoin PH and Vertex from constructing a dock in the servitude area. Rec. Doc. 10 at 13. Again, having determined that PH may construct just such a dock, the Court finds that CHS's claim for relief on this matter has been decided.

Thus, PH's Motion to Dismiss is GRANTED.

**III.     Conclusion**

Accordingly, IT IS ORDERED that:

a.  CHS's Motion to Strike (Rec. Doc. 167) is DENIED;

b.  PH's §2202 Motion to Enforce Judgment is GRANTED IN PART and DENIED IN PART (Rec. Doc. 155). The Court finds that:

   1. The D-2 location is not equally convenient under La. Civ. Code art. 748 and therefore cannot serve as an alternate location for the Grantee Dock Servitude Area;

   2. The designation of the D-2 tract as an alternate location constituted an unreasonable delay in violation of the Court's Amended Opinion;

   3. CHS is permanently enjoined from designating an alternate location for the servitude area;

c.  PH's Motion to Dismiss (Rec. Doc. 5, Civ. A. 15-1198) is GRANTED; and CHS's claims in Civ. A. 15-1198 are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana this 19th day of August, 2015.

_____
UNITED STATES DISTRICT JUDGE